Honorable George Firestone Secretary of State The Capitol Tallahassee, Florida 32301
Dear Secretary Firestone:
You recently requested my opinion on the licensing statutes for armored car guards to carry firearms posed in your question:
 DOES THE EXEMPTION FROM THE PROVISIONS OF SECTION 790.05 AND 790.06, FLORIDA STATUTES (1979), GRANTED BY SECTION 790.25(3)(f) ALSO GRANT AN EXEMPTION FROM THE NEED TO OBTAIN A STATEWIDE GUN PERMIT (CLASS `G' LICENSE) UNDER SECTION 493.315, FLORIDA STATUTES?
In answer to your question, this is to advise that the exemptions in s 790.25(3)(f), F.S., do not grant an exemption for a Class `G' license required under ss 493.304(8) and 493.315, F.S. (1981).
Chapter 790, F.S., is the law, in most instances, that controls which weapons and firearms can be lawfully possessed and controls the manner weapons or firearms can be carried within the state. Inter alia, s 790.01(2) makes it a felony to carry a concealed firearm on or about the person; s 790.05 makes it a misdemeanor to carry around or have in one's manual possession any pistol, electric weapon or device, or Winchester rifle or other repeating rifle without a license from the county commissioners of the respective counties of this state; and s 790.06 prescribes licensing procedures for county commissioners of the respective counties to issue licenses to carry concealed pistols on the person. The concealed pistol license should only be issued to persons 18 years of age or older and of good moral character, upon giving bond in the sum of $100, for a period of two years, and due to the jurisdiction of the issuing agency would only be valid for the county in which issued.
While Chapter 790, F.S., is the general weapons and firearms control statute, Part I of Chapter 493, F.S., is a statute regulating particular businesses and occupations and specially and particularly regulates and licenses certain agencies and their employees in the business of furnishing for hire private investigators, watchman, guard, or patrolman services. The Department of State administers this law and is responsible for the issuance of licenses to qualified agencies and their employees. The statute, inter alia, requires that (1) any person who performs the services of an investigator shall have a Class `C' License (493.304[3]); (2) any person who performs the services of a watchman, guard or patrolman shall have a Class `D' License (493.304[5]); and (3) only Class `C' and `D' Licensees are permitted to carry or use a firearm and any such licensee who carries or uses a firearm must have a Class `G' license (493.304[8]). The Class `G' licensing and training requirements are simply an incident of and condition for obtaining and the issuance of licenses (with the right to carry and use a firearm during official duty) which grant such licensees the privilege of engaging in the business of a private investigator or a watchman, guard or patrolman. An applicant for a Class `G' license must satisfy prescribed minimum training criteria for firearms, including range and classroom training, and demonstrate his or her fitness to carry a firearm based on a complete background investigation by the Department of State. Section 493.306(6), F.S. Cf. s 493.305(2), F.S., which allows an applicant for a Class `D' license to be employed by a guard or patrol agency as an unarmed guard or patrolman, before such an application is approved, but prohibits such applicant from carrying or using any firearm during official duty regardless of whether such applicanthas any other authority to carry a firearm. While s 790.25(3)(f) in effect operates to exempt the designated persons from the provisions of ss 790.05 and 790.06, F.S., it does not speak to any training criteria or requirements for the carrying and use of a firearm or other weapon, nor does it require that the fitness to carry and use a firearm in the course of any employment be demonstrated by complete background investigation or that any other business or employment related criteria or conditions be met or satisfied. Section 790.25(3)(f) does not refer to or purport to grant any exemption from the licensing and regulatory requirements of Part I of Chapter 493 or anywise license or regulate the businesses and occupations governed thereby. Chapter 790, F.S., proscribes and penalizes defined criminal conduct and exempts certain persons from its requirement to obtain a local license from the board of county commissioners to avoid criminal sanctions; whereas, Part I of Chapter 493, F.S., requires a state license to engage in particular businesses or occupations and a statewide gun permit for certain licensees, and satisfaction of prescribed firearms and other training requirements and demonstration of the statewide gun licensee's fitness to carry and use a firearm while performing the duties for which he or she is licensed to perform under Part I of Chapter 493. Thus, these statutes do not have a common aim or purpose and scope and do not actually relate to the same subject. Thus they are not in parimateria, and no real conflict between them exists. See Singleton v. Larson, 46 So.2d 186 (Fla. 1950); Johns v. Liberty Mutual Life Insurance Co., 337 So.2d 830 (2 D.C.A. Fla., 1976), cert. den.348 So.2d 949 (Fla. 1977); State, Dept. of Health, etc. v. McTigue,387 So.2d 454 (1 D.C.A. Fla., 1980). Even if any apparent conflict should be deemed to exist, Part I of Chapter 493 is special in its nature, objectives and application to the regulation of private investigators and guards or patrolmen and to the extent of any conflict would prevail over s 790.25(3)(f), F.S., and control the instant question. See Haverty Furniture Co. v. McKesson Robbins,19 So.2d 59 (Fla. 1944); State v. Gay, 29 So.2d 623 (Fla. 1947); Panzavecchia v. State, 201 So.2d 762 (3 D.C.A. Fla., 1967); State v. Young, 357 So.2d 416 (2 D.C.A. Fla., 1978); Pioneer Oil Co., Inc. v. State, etc., 381 So.2d 263 (1 D.C.A. Fla., 1980).
We then have two statutes that, although both speak to the carrying of weapons and firearms, are different in their primary function, objectives and purposes. Chapter 790, F.S., is penal in nature, making it unlawful for persons to go about armed unless licensed by the county or engaged in certain named activities, occupations or professions or while engaged in certain sporting activities, while Part I of Chapter 493, F.S., has as its primary function the regulation of an occupation and profession that by its statutory terms establishes rules and regulations which must be met in order to perform the services of an armed investigator, watchman, guard or patrolman.
You have previously determined that an armored car agency and its guards come within the licensing provisions of Chapter 493, F.S., and therefore unless the provisions of that Chapter conflict with Chapter 790, F.S., there is no reason to require a determination of the validity of any conflicting provisions.
In summary, I am of the opinion that until and unless judicially or legislatively determined otherwise, any person who is licensed to perform the services of a Class `C' or Class `D' licensee under the provisions of Sections 493.304(3) and (5), and who is permitted to carry or use a firearm by Section 493.304(8), F.S., in connection with official duties licensed to perform must have a Class `G' license or statewide gun permit as provided in Sections 493.304(8) and 493.315, F.S. The exemption granted guards or messengers of armored car carriers from the provisions of Sections 790.05 and 790.06, F.S., under Section 790.25(3)(f), F.S., is not applicable to or an exemption from the licensing and statewide gun permit requirements of Part I of Chapter 493, F.S.
Sincerely,
Jim Smith, Attorney General
Prepared by: A.S. Johnston, Assistant Attorney General